**NOT FOR PUBLICATION**
UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
-----------------------------------------------------------X

| | |
|---|---|
| In Re: | Chapter 7 |
| PRINCETON PAPER PRODUCTS, INC., | Case No. 09-19782 |
| Debtor. | |
| -----------------------------------------------------------X | Adv. No. 11-01813 |
| THEODORE LISCINSKI, JR., as Chapter 7 Trustee for PRINCETON PAPER PRODUCTS, INC., | |
| Plaintiff, | |
| v. | |
| FREEPORT PAPER, INC., GIL KORINE, AVCO INDUSTRIES, INC., and WESTCO, INC., | |
| Defendants. | |
| -----------------------------------------------------------X | |

APPEARANCES:

Stephen M. Packman, Esq.
Rebecca L. Rakoski, Esq.
Archer & Greiner, P.C.
One Centennial Square
Haddonfield, NJ 08033
Attorneys for Trustee/Plaintiff, Theodore Liscinski

Philip J. Cohen, Esq.
Kevin Riechelson, Esq.
Kamensky, Cohen & Riechelson
194 South Broad Street
Trenton, NJ 08608
Attorneys for Defendants, Gil Korine,
Freeport Paper Industries, Inc.,
Avco Industries, Inc., and Westco, Inc.

**MICHAEL B. KAPLAN, U.S.B.J.**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

I. <u>**Introduction**</u>

This matter comes before the Court upon the Second Amended Complaint ("Complaint") filed by Plaintiff, Theodore Liscinski, Chapter 7 Trustee ("Plaintiff" or "Trustee") against Defendants Gil Korine ("Korine"), Freeport Paper Industries, Inc. ("Freeport Paper"), Avco Industries, Inc. ("Avco"), and Westco, Inc. ("Westco") (collectively, with Freeport Paper, Avco, and Westco, the "Affiliated Entities," and with Korine, the "Defendants"). As set forth below, the Trustee's Complaint stems from the alleged fraud, fraudulent transfers, unjust enrichment, book accounts, and breach of fiduciary duties by the Defendants.

The Court held a trial on this matter on September 16, 2014, September 17, 2014, September 18, 2014, November 19, 2014, November 20, 2014, December 3, 2014, May 5, 2015, May 6, 2015 and May 7, 2015. Throughout the trial, the Court accepted several exhibits into evidence and heard testimony from the following witnesses:

| | | |
|---|---|---|
| For Plaintiff: | Theodore Liscinski | (Plaintiff/Trustee) |
| | Fred Edelman | (National Performance Packaging) |
| | Raymond Velez | (International Paper) |
| | Donna Mollenhauer | (Central National-Gottesman) |
| | John Rossini | (Central National-Gottesman) |
| | Allen Willen | (Accountant) |
| | Steve Rehder | (Interstate Container, forklift driver) |
| | Mitchell Klingher | (Accountant) |
| | | |
| For Defendants: | John Buttaro | (Fench Management) |
| | Andrew Zwerman | (Debtor and Defendant's Accountant) |
| | Avi Korine | (Operation Manager of Princeton Paper) |
| | Gil Korine | (Defendant) |

The Court has also received and reviewed the parties' post-trial submissions and, for the reasons expressed below, grants judgment in favor of the Trustee in the amount of $740,722.00,

2

as against Freeport Paper, and $524,595.67, as against Westco, together with post-judgment interest at the federal judgment rate. The Court issues the following findings of fact and conclusions of law, consistent with Fed. R. Bank. P. 7052.[1]

## II. Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. §§ 157(b)(2)(H) and (O). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. General Background

Princeton Paper Products, Inc. ("Debtor") was formed in February, 2006 as a New Jersey corporation by Defendant Gil Korine for the purpose of manufacturing pizza boxes. Korine is the sole owner and President of the Debtor, as well as Freeport Paper, Avco, and Westco. The Affiliated Entities were set up as separate and independent S-corporations, with each company maintaining its own set of financial records, financial statements and tax records, as well as keeping separate bank accounts.

Prior to the bankruptcy, the Debtor sold all of the pizza boxes it manufactured to Freeport Paper, who then re-sold those pizza boxes to large distributors for fair market value. Avco sold pizza boxes to smaller family owned businesses and was involved in the marketing and advertisements on the pizza boxes and sales, but Avco did not buy any pizza boxes from the

---

[1] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such. The Court has incorporated into its findings of fact the parties own stipulated facts.

Debtor. Avco did, however, provide initial capitalization for the Debtor, which was booked as a loan in the amount of $1,100,000.00.

For the construction of the pizza boxes, the Debtor leased a corrugator from Westco, which had been purchased from 48 Hour Sheet LLC for $300,000.00. While the corrugator was titled in Westco's name, the Debtor funded the entire purchase price, which included (i) a $125,000.00 down payment taken from the Avco loan proceeds, and (ii) an independent loan to Westco in the amount of $175,000.00. Through a lease, the Debtor was to make payments to Westco of $30,000.00 per month for 31 months; however, the Debtor made only five months of payments of approximately $149,000.00 to Westco. The Debtor obtained rolls of paper to be used in the corrugator from three main paper suppliers - Central National-Gottesman, Inc.; King Paper; and Fiber Net, LLC. As stated in the Trustee's Complaint, the Debtor owes these suppliers approximately $2,060,080.89.

On April 20, 2009, certain of the Debtor's creditors - Central National Gottesman, Inc.; Canusa Corporation; and Fiber Net, LLC - filed an involuntary Chapter 7 bankruptcy petition against the Debtor. The petitioning creditors, representing trade claims totaling $1,543,021.52, initiated the bankruptcy under the belief that the Debtor had transferred substantial funds to its principal, Defendant Korine. On May 22, 2009, the Court entered an order for relief with respect to the involuntary filing.

On June 19, 2009, Mr. Liscinski was appointed as Chapter 7 Trustee and began his administration of the case. The Trustee filed the within Complaint on May 18, 2011, which was twice amended by way of a First and Second Amended Complaint.[2] After significant pre-trial

---

[2] The Second Amended Complaint was subsequently amended further with permission of the Court but remains labeled as the Second Amended Adversary Complaint. *See* Docket Nos. 32 and 60.

4

motion practice, the Court conducted a nine-day trial, heard from twelve witnesses, and ultimately reserved decision.

### IV. Dismissal of Counts I, II, III, IV, VII, VIII, XII, XIII, XIV, and XV

During trial, specifically at the conclusion of Plaintiff's case in chief, counsel for the Defendants moved orally for a judgment on partial findings pursuant to Federal Bankruptcy Rule 7052(c). The Court reserved decision on Defendants' request and, upon conclusion of the trial, conducted a conference call with the parties on May 14, 2015. During the call, and on the record, the Court addressed Defendants' request for dismissal on partial findings and granted said request as to the following counts:

| Count I | Piercing the Corporate Veil as against Freeport Paper |
| Count II | Piercing the Corporate Veil as against Avco |
| Count III | Piercing the Corporate Veil as against Korine |
| Count IV | Breach of Fiduciary Duty as against Korine |
| Count VII | Avoidance and Recovery of Fraudulent Transfers as against Freeport Paper pursuant to 11 U.S.C. §§ 548(a) and 550 |
| Count VIII | Avoidance and Recovery of Fraudulent Transfers as against Freeport Paper pursuant to N.J.S.A. § 25:2-25(a), *et seq.* |
| Count XII | Avoidance of Transfers Pursuant to N.J.S.A. §§ 25:2-27(a) and 29 |
| Count XIII | Fraud as against Korine |
| Count XIV | Quantum Meruit as against Korine and Freeport Paper |
| Count XV | Unjust Enrichment as against Korine and Freeport Paper |

With respect to the above-referenced counts, the Court went on to issue the following findings:

- As to Counts I, II, and III, the Court found that the Plaintiff had failed to establish that the Debtor was a mere instrumentality and/or alter ego of Freeport Paper, Avco or Korine so as to completely dominate the existence of the Debtor. Accordingly, the Court dismissed those counts.

- Next, the Court dismissed Count IV, finding that the Trustee failed to prove that Korine breached his fiduciary duties owed to the Debtor and its creditors.

5

- In Counts VII, VIII, and XII, relating to the Trustee's claim for avoidance and recovery of fraudulent product and inventory transfers (as opposed to the transfer of receivables identified in subsequent counts) made by the Debtor to Freeport Paper under both state and federal law, the Court held that the Trustee had not established that there was a product transfer for less than reasonably equivalent value in exchange for the property, nor did the Trustee establish that Defendants intended to hinder, delay or defraud creditors, as specifically required in Counts VII and VIII.

- The Court then dismissed Count XIII which advanced the charge of fraud against Defendant Korine, individually, finding that the Plaintiff failed to establish that Korine, among other things, intentionally manipulated Debtor's books in fraud of its creditors, transferred Debtor's assets and sold Debtor's product at a loss as means of defrauding its creditors.

- Finally, Counts XIV and XV, which alleged claims of quantum meruit and unjust enrichment, were dismissed due to the Trustee's inability to demonstrate that Korine and/or Freeport Paper were enriched by any product being transferred for less than reasonably equivalent value in return.

*See* Transcript of May 14, 2015 Court hearing.

Upon dismissal of the aforementioned counts, seven counts remain. With respect to Counts V and XI, the Court has determined that these counts include not only the transfer of the Debtor's operating loss, but also all the netting and transferring of associated account receivables as part of a pre-petition "consolidation" undertaken by the Defendants' accountant. Further, the Court determines that Count IX, requesting the avoidance and recovery of transfers made to Westco under the federal fraudulent transfer statute, also survives the Defendants' motion, along with Counts XVI and XVII which seek to recover certain book accounts from Freeport Paper and Westco, respectively.

The Court will, however, dismiss Counts VI and X, which request avoidance and recovery of transfers as to Freeport Paper, Westco, and Korine pursuant to N.J.S.A. § 25:2-25(a),

*et seq.*[3] Specifically, the Court finds that (i) neither Freeport Paper, Westco, nor Korine intended to hinder, delay, or defraud the Debtor's creditors, and (ii) the aforementioned "consolidation" occurred *after* the Debtor ceased operations and, therefore, the Debtor was neither engaged in any business nor likely to incur any debts beyond its ability to pay. As a result, no future creditors could exist or become impacted at the time of such accounting maneuver. Accordingly, the Court is left to rule on the following five counts, and has considered all testimony, argument, and submissions filed in connection with the trial:

| | |
|---|---|
| Count V | Avoidance and Recovery of Fraudulent Transfers Pursuant to 11 U.S.C. §§ 548(a) and 550 as to Korine and Freeport Paper |
| Count IX | Avoidance and Recovery of Fraudulent Transfers Pursuant to 11 U.S.C. §§ 548(a) and 550 as to Westco |
| Count XI | Avoidance of Transfers Pursuant to N.J.S.A. §§ 25:2-27(a) and 29 as to Freeport Paper, Avco, and Korine |
| Count XVI | Book Account as to Freeport Paper |
| Count XVII | Book Account as to Westco |

---

[3] N.J.S.A. § 25:2-25 states as follows:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

    a. With actual intent to hinder, delay, or defraud any creditor of the debtor; or

    b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (2) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

## V. Discussion

### A. The Transfers

As previously mentioned, the Trustee alleges in his Complaint that the Defendants fraudulently transferred assets from Princeton Paper to themselves, and that those assets should therefore be a part of the bankruptcy estate. These alleged fraudulent transfers refer specifically to two account receivables that were removed from the Debtor's books prior to the involuntary filing. The Debtor represented a receivable of $740,722.00 as being due from Freeport Paper on its 2007 and 2008 federal tax returns that were filed with the Internal Revenue Service. All parties acknowledge that this receivable was initially placed on the ledgers of the Debtor in exchange for an operating loss transferred to Freeport Paper, which loss Korine was able to utilize as a tax benefit on his individual return. Defendants' accountant later reversed this transaction, returning the loss to the Debtor and eliminating the receivable from Freeport Paper's ledger. The parties dispute the impact of the accountant's reversal, as the Defendants believe it had no impact on the net liabilities of the Debtor, while the Trustee views the receivable as a legitimate asset that should have been included in the bankruptcy estate and thus available to creditors.

The second receivable of $524,595.67 due from Westco was on the 2007 year-end books of the Debtor, as well as its 2008 tax return filed with the Internal Revenue Service. This receivable was comprised of various transactions between Princeton Paper and Westco described in the following chart provided by the Defendants.[4]

---

[4] While both Plaintiff and Defendants reference $524,595.67 as the total amount due to the Debtor from Westco, the Court notes that the total amounts transferred according to the above chart equal $500,595.77. Additionally, in reaching this figure Westco has taken a credit for exorbitant lease payments. *See* Footnote 5, *infra*. Indeed, the Court is cognizant of Defendants' own admission that the Debtor transferred nearly $750,000.00 to Westco in cash during this period.

8

| Date | Amount | Transaction |
|---|---|---|
| March 31, 2006 | $125,000.00 | Cash paid by Princeton for equipment from Westco |
| March 31, 2006 | $175,000.00 | Record loan payable taken by Princeton to Westco |
| March 31, 2006 | ($18,000.00) | Westco Charge for use/rental for equipment |
| May 31, 2006 | ($29,166.67) | Westco make one month payment on $175,000 loan |
| August 31, 2006 | ($87,500.01) | Westco makes three month payment on $175,000 loan |
| September 30, 2006 | $97,000.00 | Record purchase of equipment and supplies on behalf of Westco |
| October 31, 2006 | ($29,166.55) | Westco makes on month payment on $175,000 loan |
| September 30, 2007 | $343,429.00 | Record purchase of equipment and supplies on behalf of Westco |
| October 3, 2007 | ($76,000.00) | Westco charging for use/rental of equipment by Princeton |
| Total | $524,595.67 | |

*See* Defendants' response to Plaintiff's Proposed Findings of Fact and Conclusions of law, Docket No. 124, ¶64. Consistent with the treatment of the Freeport Paper receivable, this Westco receivable was removed from the Debtor's books by the Defendants' accountant, who had recommended netting all intercompany transactions between the Debtor and the Affiliated Entities when Princeton Paper ceased operations in September of 2008.

The Debtor and Affiliated Entities employ the same accountant, Andrew Zwerman, CPA ("Zwerman") from the accounting firm of Wagner and Zwerman. Zwerman testified that he received and corrected journal entries where appropriate, as well as prepared the computations for Debtor's 2007 and 2008 financial statements (based upon information and representations provided by Korine). Moreover, Korine signed off on the verification of the tax returns filed by

or for the Debtor, as Zwerman testified that he shares and reviews all tax returns and financials with the client prior to executing them.

### B. Legal Analysis

#### (i) Fraudulent Transfers as to Freeport Paper and Westco

The Trustee alleges that the elimination of the two receivables due from Freeport Paper and Westco constitutes fraudulent transfers under both 11 U.S.C. § 548 and the New Jersey Uniform Fraudulent Act, under § 25:2-27(a). As a preliminary matter, the Court addresses the Defendants' contention that the removal of the receivables had no impact on the creditors' rights. This position reflects a misunderstanding of the law as it is applied to the transactions at issue.

Defendants erroneously place their focus on the transfers of the operating loss from the Debtor to Freeport Paper. It is true that the Debtor and Affiliated Entities are pass-through entities for federal income tax purposes, and thus the entities are not subject to income tax; rather, the owners, such as Korine, are directly taxed individually on the income and receive the benefits of any losses. As a consequence, the transfer of the losses, which could not be used by the Debtor, resulted in no discernible prejudice to the Debtor or its creditors. Yet, the availability of an operating loss had meaningful value to Freeport Paper. So much so, that Freeport Paper obligated itself to the Debtor in order to acquire the loss, and opted to give value to the Debtor in order to have the tax benefits of the loss redirected in favor of its principal, Korine. It is of no moment that Freeport Paper provided substantial consideration for something that offered little or any value to the Debtor. Of import, however, is that Freeport Paper subsequently was relieved of its obligation to pay such value.

At no time during the trial, or in their post-trial submissions, do Defendants address the fact that the pre-petition "consolidation" by the accountant of intercompany obligations, which

eliminated the Freeport Paper and Westco receivables, represents a significant loss of value to the Debtor's creditors. The Debtor's creditors could no longer look to these receivables to satisfy the company's substantial indebtedness. The accounting manipulation may have been prudent from an accounting perspective, but it was deleterious to creditors.[5]

Section 548 of the Bankruptcy Code describes the powers of a trustee in bankruptcy to avoid fraudulent transfers. That provision grants a trustee the authority to avoid transfers undertaken with actual fraud, as well as certain other constructively fraudulent transfers made within two years of the date the bankruptcy petition was filed. *Forman v. Jeffrey Matthews Fin. Group, LLC (In re Halpert & Co.)*, 254 B.R. 104, 114-115 (Bankr. D.N.J. 1999) (citing *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 535 (U.S. 1994)); *see also* 11 U.S.C. § 548(a)(1)(B)(i)-(ii). A transfer of property is deemed constructively fraudulent under 11 U.S.C. § 548(a)(1)(B) if, within two years prior to the filing of the bankruptcy petition, the transferor receives "less than reasonably equivalent value" in a transaction and the transferor:

> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C. § 548(a)(1)(B); *see also Jurista v. Amerinox Processing, Inc.*, 2013 U.S. Dist. LEXIS 49515 (D.N.J. Mar. 28, 2013). The party seeking the recovery of a fraudulent transfer has the

---

[5] In this regard, the Court has serious reservations relative to the propriety, for tax purposes, of the operating loss transfer as between affiliates (as opposed to a parent-subsidiary relationship). However, the issue has not been addressed by the parties and the Court is ill-equipped at this juncture to adjudge this issue. The Court is cognizant that treating the initial transfer of the operating loss as a legal nullity from the outset could impact the fraudulent transfer analysis, but Defendants have not chosen this approach. Perhaps doing so would have a substantial negative tax impact for Mr. Korine.

burden to satisfy the elements identified above. *In re Fruehauf Trailer Corp.*, 444 F.3d at 215 ("The party bringing the fraudulent conveyance action bears the burden of proving the elements [of a fraudulent conveyance claim] by a preponderance of the evidence"); *Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635, 648 (3d Cir. 1991).

Similarly, the New Jersey Uniform Fraudulent Act, pursuant to N.J.S.A. § 25:2-27(a), provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation.

N.J.S.A. § 25:2-27. Thus, to recover a constructively fraudulent transfer under the relevant state and federal statutory scheme, a plaintiff must establish that (1) the debtor had an interest in the property; (2) the transfer of the interest occurred within 2 years of the petition (4 years under New Jersey state law); (3) the debtor was insolvent at the time of the transfer or became insolvent as a result thereof; and (4) the debtor received less than a reasonable equivalent value in exchange for such transfer.

In the case at bar, to satisfy the first element, the Trustee must show that the Debtor transferred an interest in property. The Bankruptcy Code broadly defines a transfer as "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54)(D). The two transfers that the Trustee seeks to avoid are the netting of intercompany account receivables of $740,722.00 and $524,595.67, which were on the Debtor's books until they were removed by tax accounting driven journal entries made in 2008. The presence of these receivables on the Debtor's ledgers represented assets that would have been available to the bankruptcy estate had

12

they not been eliminated as part of the restructuring undertaken by Debtor's accountant on the eve of bankruptcy. Such actions fall within the above-referenced definition of a "transfer," thus satisfying the first element.

The next issue is whether the transfer occurred within two years of the bankruptcy filing. The involuntary petition was filed against the Debtor on April 20, 2009. Although it is unclear which specific date the receivables were removed and the Affiliated Entities' obligations eliminated, it is evident that the receivables were both on the Debtor's federal tax returns and financial statements for 2008. Therefore, the transfer must have occurred less than 2 years before the filing of the bankruptcy petition, satisfying the second element.

The third element pertains to the Debtor's financial state when the transfer occurred. "Insolvent" is defined by the Bankruptcy Code with respect to an entity other than a partnership or municipality, as "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and (ii) property that may be exempted from property of the estate under section 522 of this title." 11 U.S.C. § 101(32)(A). This section describes a "balance sheet" test for the Court to determine whether the Debtor's debts exceeded its assets at fair valuations. *In re David Cutler Industries, Ltd.*, 502 B.R. 58 (Bankr.E.D.Pa. 2013), (*citing In re Am. Rehab & Physical Therapy, Inc.*, 2006 WL 19997431, at 8 (Bankr.E.D.Pa. 2006)).

By its own admission, the Debtor was unable to pay its debts as of September 2008 and thus ceased operations. Likewise, the Trustee testified at trial that, based on his investigations, the Debtor did not own or possess any meaningful assets apart from those identified in the schedules. It follows, therefore, that the transfers rendered the Debtor insolvent, as the Debtor

13

went from having approximately $1,200,000.00 in receivables on its books when it filed its tax returns in 2008, to ceasing operations due to an inability to pay debts in September of the same year. Further, the bankruptcy schedules reflect that the Debtor's only asset (as of the involuntary filing, which occurred just a few short months after operations ceased) is a $20,000.00 refund check for a worker's compensation policy, as compared to liabilities totaling $2,589,202.72 due to forty-eight creditors. Therefore, the third element regarding the Debtor's insolvency at the time of the transfer is satisfied.

The fourth and final element the Trustee must establish is that the Debtor did not receive reasonably equivalent value in return for the transfer. Although "reasonably equivalent value" is not defined by the Bankruptcy Code, the Third Circuit has stated that "a party receives reasonably equivalent value for what it gives up if it gets roughly the value it gave," considering the totality of the circumstances surrounding the transfer. *In re Autobacs Strauss, Inc.*, 473 B.R. 525, 568 (Bankr. D.Del. 2012). The Bankruptcy Code defines "value" for purposes of [S]ection 548 as "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor[.]" 11 U.S.C. § 548(d)(2)(A). A court must consider whether, "based on the circumstances that existed at the time" of the transfer, if it was "legitimate and reasonable" to expect some value accruing to the debtor, in determining whether the debtor received any value at all. *In re Autobacs Strauss, Inc.*, 473 B.R. at 568. Courts also look to the "totality of the circumstances" including (1) the "fair market value" of the benefit received as a result of the transfer, (2) "the existence of an arm's-length relationship between the debtor and transferee" and (3) the transferee's good faith. *Id.*

14

Based on the evidence before the Court, it does not appear that the Debtor ever received any value at all (let alone reasonably equivalent value) for the elimination of the two intercompany receivables. The receivable from Freeport Paper for $740,722.00 was originally placed on the Debtor's books in exchange for an operating loss, allowing Korine, individually, a tax advantage. There was an exchange of value in this initial transfer, as Korine was able to recognize the loss for tax purposes and Princeton Paper received an intercompany receivable of significant monetary value due from Freeport Paper. There was no such exchange of value, however, when the journal entries were reversed, as the tax loss was now worthless, unlike the receivable. Instead, Freeport Paper benefitted by being relieved of a substantial obligation owing the Debtor.

Similarly, the $524,595.67 on the Debtor's books as due from Westco was removed without consideration when the books were "consolidated" with those of the separate entities. This receivable, which was comprised of various transactions between Westco and Princeton Paper, was simply forgiven in this "consolidation", thus there was no exchange of value when the receivable was transferred from the Debtor to Westco.[6] The Debtor also did not receive reasonably equivalent value for what it surrendered, as the receivables totaling approximately $1,200,000.00 are significantly greater than any consideration returned to the Debtor. Thus, Defendants have failed to meet their burden of proof as to reasonably equivalent value having

---

[6] The Court pauses briefly to address the set-off defense raised by Defendants, as the exchange for value element relates closely to set-off. During trial, Defendants argued that Westco engaged in a proper pre-petition set-off and, therefore, the transactions cannot be challenged. While it is undisputed that there existed an outstanding obligation owing by Westco to the Debtor, as previously noted, there has been no evidence presented to demonstrate that the Debtor owed a corresponding debt to Westco. Rather, the Debtor had an outstanding intercompany loan obligation owing to Avco, not Westco. Indeed, the only evidence presented to support a debt due to Westco from the Debtor is a sham lease whereunder the Debtor was to pay Westco $30,000.00 per month for 31 months, for a total of $930,000.00, for a corrugator that was purchased for only $300,000.00 but later sold for a meager $10,000.00. *See* Defendants' Proposed Findings of Fact and Conclusions of law, Docket No. 125, ¶67. The sheer absurdity of such an arrangement cannot be understated. Thus, the Court does not accept the bona fides of the lease and finds that Defendants have failed to demonstrate the availability of a valid set-off defense.

been given to the Debtor for the transfers. As a result, the fourth element is satisfied and the Trustee may recover the value of the receivables, from Freeport Paper and Westco, as constructively fraudulent transfers.

Although 11 U.S.C. § 550 allows a trustee to recover from certain entities, including those for whose benefit a transfer was made, the record before the Court does not support a finding that Korine, individually, received any benefit from the pre-petition netting of the intercompany obligations (in contrast to the ultimate tax benefit received from the initial transfer of the operating loss). The tax benefits realized by Mr. Korine were not property of the estate that had value to the Debtor or its creditors and, indeed, Mr. Korine is the only person that can realize the tax savings of the operating loss. Accordingly, the Court does not find Korine liable under § 550 for the avoided transfers and will enter judgment in his favor on all of the fraudulent transfer counts.[7] As such, the Trustee may only recover against Freeport Paper and Westco with respect to the constructively fraudulent transfers under 11 U.S.C. § 548(a) and N.J.S.A. § 25:2-27(a).

### (ii) Book Account Claims as to Freeport Paper and Westco

The Trustee may also recover under a common law book account cause of action. A book account claim is similar to a claim for breach of contract, as it requires the movant to show, "that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." *CPS MedManagement LLC v. Bergen Regional Medical Center, L.P.*, 940 F.Supp.2d (D.N.J. 2013), (citing *Murphy v. Implicito*, 392 N.J.Super. 245, 265 (App.Div. 2007). "The only difference between the two claims is that in a book account case, ***the books of account kept by plaintiffs may prove the***

---

[7] Nor does the Court find a basis to impose liability against Avco.

*amount owed.*" *Darush L.L.C. v. Macy's Inc.*, 2012 U.S. Dist. LEXIS 92380 (D.N.J. July 3, 2012) (emphasis added).

Upon avoiding the transaction in which the receivables owing the Debtor were consolidated and the operating loss returned, the basis for a book account claim is revived. Whereas the only defense at trial to the Trustee's book account causes of action was that the relevant ledgers reflected a "zero" balance, those balances should now be reinstated, in turn proving the amounts owed. Accordingly, the Trustee may recover the value of the avoided transfers against Freeport Paper and Westco based upon the Trustee's common law book account causes of action.

### (iii)    Pre- and Post-Judgment Interest

The Court will briefly address the Trustee's entitlement to pre- and post-judgment interest. With respect to pre-judgment interest, *Carolee, LLC v. eFashion Solutions, LLC* states succinctly that, "[i]n New Jersey, awarding pre-judgment interest is 'a matter of discretion for the trial court' and, on a contract claim, is 'governed by equitable principles,' where '[t]he basic consideration is that the defendant has had the use, and the plaintiff has not, of the amount in question.'" 2013 U.S. Dist. LEXIS 145756, 10-11 (D.N.J. Oct. 9, 2013), citing *Cnty. of Essex v. First Union Nat. Bank*, 186 N.J. 46, 61, 891 A.2d 600 (2006) (citations and quotations omitted); see also Restatement (Second) of Contracts § 354 (1981) ("If the breach consists of a failure to pay a definite sum in money . . . *interest is recoverable from the time for performance on the amount due* less all deductions to which the party in breach is entitled.") (emphasis added).

In this case, no specific due dates were reflected in the relevant ledger entries. As such, the Court cannot ascertain a specific point in time in which performance was due and the selection of any such date would be completely arbitrary. Thus, the Court will not award the

17

Trustee pre-judgment interest on the judgment entered herein. The Court will, however, allow for post-judgment interest, at the federal judgment rate, as such interest accrues upon entry of judgment consistent with the Court's ruling.

## VI.     Conclusion

For the reasons set forth above, the Court will enter judgment in favor of the Trustee in the amount of (i) $740,722.00 as against Defendant Freeport Paper pursuant to Counts V, XI, and XVI, and (ii) $524,595.67 as against Westco pursuant to Counts IX and XVII. Additionally, the Court will dismiss Counts VI and X. The Trustee's counsel is directed to submit a form of judgment consistent with the Court's ruling, on notice to the appropriate parties.

Dated: November 6, 2015

_/s/ Michael B. Kaplan_
Honorable Michael B. Kaplan
United States Bankruptcy Judge